## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

UGANDA SMITH,

    Plaintiff,

v.               ACTION NO. 4:09-cv-80

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

  This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72(b) of the Federal Rules of Civil Procedure, as well as Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia, by an order of reference entered September 11, 2009.

  Plaintiff brought this action under 42 U.S.C. § 405(g) seeking judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's claim for Supplemental Security Income ("SSI") pursuant to section 1382c of the Social Security Act (the "Act"). 42 U.S.C.A. §§ 1381-1385 (2010).

## I. PROCEDURAL BACKGROUND

  The plaintiff, Uganda Smith, filed an application with the Social Security Administration to establish a period of disability and an award of supplemental security income on February 18, 2005.

[R. 19].[1] In her claim, Smith alleged an onset of disability beginning May 1, 2000, due to depression, a history of mental health problems, and anxiety. [R. 45]. The application was initially denied on June 10, 2005, and upon reconsideration, denied again on September 16, 2005. A hearing was held before Administrative Law Judge ("ALJ") Alfred Costanzo on November 6, 2006 in Newport News, Virginia. On May 21, 2007, Judge Costanzo issued a decision and order denying benefits to Smith. [R. 19]. On April 24, 2009, upon the denial of the Smith's request for review by the Appeals Council (in the Office of Disability Adjudication & Review of the Social Security Administration) the ALJ's decision became the defendant's (Commissioner's) final decision. Having exhausted all administrative remedies, Smith filed this action for judicial review, in accordance with 42 U.S.C. § 405(g), on June 19, 2009. [Doc. No. 1]. In her Motion for Summary Judgment, Smith specifically challenges the ALJ's decision and seeks reversal because the ALJ erred in: (a) not properly evaluating and analyzing the medical source opinions of her licensed professional counselor; (b) not properly evaluating and analyzing the medical source opinions of her treating psychiatrist; and, (c) finding on February 23, 2010 that she could perform work on a regular and sustained basis. [Pl.'s Br. Mot. Summ. J.at 21].

## II. **FACTUAL BACKGROUND**

Smith was born on March 16, 1973, making her 34 years of age at the time of the ALJ's decision, [R. 27], an age recognized by the Code of Federal Regulations as including "younger person[s]," capable of adjusting to other work. 20 C.F.R. § 416.963(c) (2010). Smith is a high school graduate, and completed a job training program to work as an assistant at the YMCA. [R. 97]. Smith did not attend special education classes while in school,[R. 97], although she was required

---

[1] Page citations are to the administrative record previously filed by the Commissioner.

to repeat some lower grades and some specific classes in the tenth grade. [R. 21]. She stated that she was temporarily placed in accelerated classes in English and Spanish, but later returned to the regular curriculum. [R. 98]. She attended community college classes, [R. 181], but was unsuccessful in that endeavor [R. 469]. Smith's previous work experience included child care, sales, and food service. With the exception of child care, these employments were short-lived. [R. 116-18]. In forms completed in conjunction with her application for benefits, Smith stated that she was currently babysitting a nine-year-old child. [R. 92].

The medical conditions giving rise to Smith's request for benefits are psychological in nature, and include, social anxiety, a depressed mood, and impaired intellectual functioning. [R. 23]. For these impairments, Smith has been evaluated by a number of health care providers including: Dr. Dana Sari (psychological evaluation); Dr. Stonsa Insinna (mental residual functional capacity assessment); Dr. Daniel Walter (mental residual functional capacity assessment); Dr. Mukesh Shah (mental residual functional capacity assessment); and Ms. Phyllis Pugh, LPC, CSAC (mental residual functional capacity assessment). These evaluations spanned from March 29, 2004, to January 6, 2006. [Pl.'s Br. Mot. Summ. J. at 3-4, 7]. In addition, Smith submits that from August 24, 2004 to May 30, 2006 she experienced irritability, excessive sleep, depression, isolation, disinterest, fatigue, sadness, forgetfulness, difficulty sleeping, low self-esteem, dizziness, and poor appetite. [Pl.'s Br. Mot. Summ. J. at 4-7].

The Commissioner does not dispute Smith's recitation of the facts, but does aim to complete the record by noting that:

> [Smith's] daily activities included caring for her personal needs, walking, watching television, cleaning, doing laundry, taking out the trash, washing dishes, sweeping, mopping, shopping, and preparing food. She enjoyed reading and listening to music, and went to church

3

and to visit her brother. [Smith] lived with a friend during the relevant period, and provided all-day care for her friend's two-year-old child while the friend was at work. She reported that prior to moving in with her friend, she lived with an elderly aunt, to whom she also provided care.

[Def.'s Br. Mot. Summ. J. at 3]. In addition, the Commissioner presents a different position with respect to the findings of the various health care providers and their mental residual function capacity assessments. [Def.'s Br. Mot. Summ. J. at 3-8].

Despite Smith's claims of a mental and psychological inability to work, ALJ Costanzo, in a written decision dated May 21, 2007, issued an unfavorable ruling concluding that Smith was not disabled under section 1382[2] to qualify for SSI. [R. 28]. Due to Smith's age, education, work experience, and residual functional capacity, yet considering her severe, non-exertional impairments, ALJ Costanzo found that Smith was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. [R. 27].

## III. STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the Court is limited to determining whether the Commissioner's decision was supported by *substantial evidence* on the record, and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C.A. § 405(g) (2010) (emphasis added); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as 'a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*,

---

[2]All citations to the "Act" in this R&R are to the codified version of the United States Code or United States Code Annotated. In the record, the ALJ refers to these sections according to their administrative codification.

402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. of N. Y. v. NLRB*, 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Hays*, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or the [Commissioner's] designate, the ALJ)." *Craig*, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. *Perales*, 402 U.S. at 390. Thus, reversing the denial of benefits is appropriate only if either (A) the ALJ's determination is not supported by substantial evidence on the record, or (B) the ALJ made an error of law. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (*citing Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980)).

## IV. ANALYSIS

### A.    Determining Disability

In order to qualify for SSI, a person under age sixty five must be disabled. 20 C.F.R. § 416.202 (2010). To qualify for a period of disability under section 1382 of the Act, one must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C.A. 1382c(3)(a) (2010). Similarly, the Social Security Regulations define "disability" for the purpose of obtaining disability benefits under Title II of the Act as the inability to do any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a) (2010). To meet this definition, the claimant must have a "severe impairment" which makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy. *Id.*

In evaluating claims for SSI, the regulations promulgated by the Social Security Administration provide that all material facts will be considered to determine whether a claimant has a disability. The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The ALJ must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that equals a condition contained within the Social Security Administration's official listing of impairments, (4) has an impairment that prevents past relevant work, and (5) has an impairment that prevents her from any substantial gainful employment. An affirmative answer to question one, or negative answers to questions two or four, result in a determination of no disability. Affirmative answers to questions three or five establish disability. 20 C.F.R. § 416.920 (2010).

## B.    ALJ's Findings

In this case, ALJ Costanzo found the following regarding Smith's condition. First, Smith had not engaged in substantial gainful activity since May 1, 2000. This determination was supported by the ALJ's casual reference to a DISCO (D.I.B. Insured Status Calculator Online) Report dated September 26, 2006.[3] [R. 21]. *See also* [R. 74-82].

---

[3]Although the ALJ's support for the finding that Smith did not engage in substantial gainful activity did not reference the administrative record and was rather terse, since it favors Smith, and was not objected to by her in her briefs, the Court should accept the ALJ's brief rationale.

Second, Smith suffered the following severe impairments: borderline intellectual functioning; and a major depressive disorder. [R. 21]. The borderline intellectual functioning finding was based on Dr. Dana Sari's, Ph.D., diagnosis in March 2004, in which she found that Smith suffered a social anxiety disorder and borderline intellectual functioning. These diagnoses were based, in part, on the result of Smith's scores of 78, 79, and 77 on the WAIS-III (Wechsler Adult Intelligence Scale) Verbal, Performance, and Full Scale, tests, respectively. [R. 21]. Smith's major depressive disorder was based on Dr. Robert Pitsenbarger's diagnosis in October 2004. This finding was the result of Smith's description of her mood during the assessment. [R. 22]. Dr. Sari's finding of borderline intellectual functioning was buttressed by Dr. Pitsenbarger's evaluation in which he found Smith to be of average, or below average, intelligence based on her vocabulary, capacity for associations and abstract reasoning abilities.[R. 22]. All of Smith's other impairments were non-severe because they did not exist for a continuous period of at least twelve months, were responsive to medication, did not require significant medical treatment, or did not result in any continuous exertional or non-exertional functional limitations. [R. 23].

Third, Smith did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 24]. Smith's impairments did not cause a "marked" limitation in two areas, or an "extreme" limitation in one area considered in the "B" criteria of Listing 12.02 or Listing 12.4. While ALJ Costanzo acknowledged that Smith suffered impairments that prevented her from performing complex tasks routinely, he noted that she still retained the ability to perform simple tasks. For example, Smith did not have difficulty interacting with her health care providers, she reported having a boyfriend, and she was able to take care of her friend's child. [R. 24]. While Smith did complain of other

7

impairments, namely severe social isolation, chest pain, and depression, [R. 25], the ALJ found evidence in the record to refute the seriousness of those impairments. For instance, with respect to the alleged chest pain, ALJ Costanzo stated that the record was devoid of medical evidence, consisting of signs, symptoms or laboratory findings which established the existence of a medically determinable impairment related to chest pain. [R. 25]. Furthermore, as to Smith's allegation of severe social isolation, ALJ Costanzo reasoned that Smith was capable of taking care of an elderly person and a child, and her psychiatrist and therapist both reported that she had not demonstrated significant trouble dealing with others on a one-to-one basis. [R. 26]. Lastly, ALJ Costanzo found that Smith's depression was in part exacerbated by Smith herself because she failed to take her prescribed medication regularly, thus not constituting a severe impairment incapable of treatment. [R. 25]. As a result, the ALJ found that even though Smith had mental impairments that limited her ability to perform complex tasks and to interact with the public, she retained the Residual Functional Capacity (RFC) to perform the exertional demands of work as defined in 20 C.F.R. § 416.967(a)[4] and simple, repetitive tasks that did not expose her to the public at any significant level. [R. 26].

Fourth, ALJ Costanzo found that Smith had no past relevant work. This determination was based on her earned wages falling below the amount required in 20 C.F.R. § 416.974. That regulation requires more than approximately $700/month in earnings in order to be classified as having engaged in substantial gainful activity. 20 C.F.R. § 416.974 (2010). Documents in the record

---

[4] The Regulation classifies work into five different categories based on exertion. The preface describes the process, "[t]o determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy. These terms have the same meaning as they have in the Dictionary of Occupational Titles, published by the Department of Labor." 20 C.F.R. § 416.967 (2010).

indicate Smith only earned above $1,000 in a year once, and that was in 1997, before the period for which she sought SSI. In the years from 2000-2005, Smith's earnings did not meet the Code requirement for substantial gainful activity. [R. 76].

Lastly, considering Smith's age, education, work experience, and RFC, the ALJ determined that there were a significant numbers of jobs in the national economy that Smith could perform. This conclusion was based on the framework provided in Social Security Ruling 85-15 concerning non-exertional limitations.[5] As the ruling guides, "[w]here there is no exertional impairment, unskilled jobs at all levels of exertion constitute the potential occupational base for persons who can meet the mental demands of unskilled work. These jobs ordinarily involve dealing primarily with objects, rather than with data or people, and they generally provide substantial vocational opportunity for person [sic] with solely mental impairments who retain the capacity to meet the intellectual and emotional demands of such jobs on a sustained basis." Social Security Ruling 85-15, http://www.ssa.gov/OP_Home/rulings/di/02/SSR85-15-di-02.html. ALJ Costanzo acknowledged that Smith's ability to perform at all exertional levels had been compromised, but the limitations, he found, had little or no effect on the occupational base of unskilled work, at all exertional levels, that Smith was capable of engaging in. [R. 27]. Given the minimal impact on the occupational base, or pool of available jobs, that Smith's impairments imposed, ALJ Costanzo determined there was work existing in significant numbers for Smith to engage in. [R. 27].

---

[5] The ruling sets out the two main issues concerning solely non-exertional limitations. First, how much the person's occupational base -the entire exertional span from sedentary work through heavy (or very heavy) work- is reduced by the effects of the non-exertional impairment(s); and second, whether the person can be expected to make a vocational adjustment considering the interaction of his or her remaining occupational base with his or her age, education, and work experience.

## C.    Alleged Errors

To recall, the standard of review in Social Security appeals mandates that this Court not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). As a result, in order to prevail, Smith must overcome a hefty burden to prove there is not substantial evidence to support ALJ Costanzo's decision. As the *Laws* court illuminated, substantial evidence is that which consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Alternatively, Smith may argue that the ALJ made an error of law. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (*citing Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980)). In sum, Smith must prove that there is a mere scintilla, or less, of evidence to support ALJ Costanzo's decision denying benefits, or that ALJ Costanzo made an error of law.

In her brief, Smith alleges the ALJ erred in: (a) not properly evaluating and analyzing the medical source opinions of her licensed professional counselor; (b) not properly evaluating and analyzing the medical source opinions of her treating psychiatrist; and, (c) finding on February 23, 2010 that she could perform work on a regular and sustained basis. [Pl.'s Br. Mot. Summ. J.at 21]. The Court will take each in turn.

*Claim (a)*

Smith's first claim concerns the ALJ's alleged failure to "acknowledge and evaluate the medical opinion of a treating medical source, Ms. Phyllis Pugh, LPC, CSAC, or accord her opinion

any weight. [Pl.'s Br. Mot. Summ. J.at 12]. This argument appears to challenge the ALJ's finding on both evidentiary and legal grounds.

To begin, with regard to this challenge concerning the ALJ's alleged error of law, Smith confronts a substantial obstacle because not all forms of evidence, nor all sources of evidence, are permitted, or required, to establish a disability. As the Code explains, "[w]e need evidence from acceptable medical sources to establish whether you have a medically determinable impairment(s)." 20 C.F.R.§ 416.913(a) (2010). The C.F.R. goes on to enumerate these sources as: physicians, psychologists, optometrists, podiatrists, and speech language therapists. *Id.* This requirement notwithstanding, the regulation also permits some other sources. "In addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, we *may* also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work . . . ." *Id.* at (d) (emphasis added). Far from requiring or relying on evidence from health care providers other than physicians, psychologists, optometrists, podiatrists, and speech language therapists, the regulation states that the Social Security Administration *may* use evidence from individuals such as Ms. Pugh. In this sense, Smith is incorrect in her belief that ALJ Costanzo was obliged to afford significant weight to Ms. Pugh's opinions. Smith is also incorrect in analogizing her case to *Perkins v. Apfel.* 101 F.Supp2d 365 (D. Md. 2000). In *Perkins*, the court remanded the case instructing the ALJ to indicate and articulate the weight given to each of the opinions of a treating and a consultative physician. *Id.* at 376. Here, Smith is objecting not to the weight afforded to the opinion of a treating physician, but to a licensed counselor. The two professions have not been equated in the code of federal regulation, or in the eyes of the courts of this circuit.

Similarly, *Payne v. Barnhart*, 366 F.Supp.2d 391 (W.D.Va. 2005), is distinguishable from

the instant case. That situation involved a dispute between the weight given to the evidence of the treating sources compared to that of the non-examining sources. *See id.* at 401-02. Here, the distinction is between C.F.R.-required medical sources, and C.F.R.-permissible additional sources. Smith does not properly cite any case, regulation, or statute that suggests Ms. Pugh's opinion "must be given controlling weight or evaluated in all of the areas referenced in 20 C.F.R. Section 404.1527(d)." [Pl.'s Br. Mot. Summ. J.at 14].

As near as Smith can come in her argument that Ms. Pugh's opinion is deserving of substantial, if not controlling, weight is the statement of the court in *Thompson v. Astrue.* 2008 WL 4273840, at *11 (W.D.Va. Sep. 17, 2008). "The ALJ must generally give more weight to the opinion of a treating physician because that physician is often most able to provide 'a detailed, longitudinal picture' of a claimant's alleged disability. However, 'circuit precedent does not require that a treating physician's testimony be given controlling weight.' In fact, 'if a physician's opinion is not supported by the clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.'"*Id. (quoting Hunter v. Sullivan,* 993 F.2d 31, 35 (4th Cir.1992) (per curiam); *Craig v. Chater,* 76 F.3d 585, 590 (4th Cir. 1996) respectively). Still, here Smith is challenging the ALJ's analysis of her counselor's opinion, not her physician's. As *Thompson* reveals, even the opinions and evidence of a treating physician are not always required to be afforded controlling weight. Furthermore, *Thompson* reinforces the distinction and the importance of the evidence of the treating *physician,* and not the licensed therapist. That is to say, the use of the term "physician" cannot be misconstrued as a term of art. Since the C.F.R. specifically uses the term physician in the code, it should be interpreted that the *Hunter, Craig,* and *Thompson* courts mean "physician" as a medical doctor or doctor of osteopathy as narrowly defined in the Code. 20

C.F.R. § 416.913(a) (2010). Thus, Smith's argument that the ALJ did not properly evaluate and analyze the medical source opinions of Ms. Pugh is incorrect, (a) because she is not a physician, and (b) because even if she were a physician her opinions would not necessarily be afforded controlling weight.

Smith also argues, at the root, that Ms. Pugh's opinion evidence was not evaluated. The record does not bear this out. For instance, when determining Smith's impairments ALJ Costanzo took into consideration, "[t]reatment notes from November 2004 show[ing] that the claimant was fully oriented and her affect was sad but [she] reported that her mood had improved", "[t]reatment notes from February 2005 show[ing] that Ms. Smith was fully oriented and her affect was pleasant", "[t]he therapist['s] note[s] that the claimant's mood had been stabilized", and her therapist's record that Smith's depressive symptoms had decreased in March 2005. [R. 22]. While, admittedly, these references to the therapists reports are minimal (considering the twenty-eight-page ALJ opinion) and supportive of the ALJ's conclusion, they are sufficient analysis of Ms. Pugh's opinion, especially in light of the finding above-that there is no mandatory amount of weight required to be given to the opinion of a medical source, let alone a non-medical source.

Moreover, the fact is, there is substantial evidence in the record to support ALJ Costanzo's decision that Smith is capable of work. For example, consider the following six examples. Beginning on April 10, 2004, Dr. Dana Sari, Ph.D., stated, "[s]he is capable of simple and repetitive tasks", "[s]he also appears capable of slightly more complex tasks given her ability to care for others competently . . . .", "[w]ith treatment, these symptoms are likely to improve considerably." "She is currently capable of competent employment if the situation does not expose her to customer service or the public at any significant level." [R. 183]. On November 8, 2004, Dr. Robert Pitsenbarger

found, "[s]he reports improvement in her mood overall. She states that she is worrying about things less." He concluded, her "[t]hought processing was goal oriented. There was no indication of perceptual disturbance, nor of impaired judgment." [R. 337]. On June 8, 2005, Dr. Daniel Walter, Ph.D., concluded, "[t]he claimant is able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairment." [R. 285]. On May 8, 2006, Ms. Pugh recorded that Smith's depressive symptoms had decreased. "She was able to get an apartment. She maintained a job for a short while. She has applied to for SSD." [R. 437]. On May 30, 2006, Dr. Shah wrote in his evaluation that he told Smith with good compliance she would do better and "may be able to return to work", he also noted that "[s]he was not upset about that recommendation." [R. 435]. And lastly, on June 1, 2006, Ms. Hazel Perry, LPN, suggested in her notes that Smith's motives for therapy might not be to improve her emotional and mental well-being, concluding, "spoke with Dr. Shah this am, and he stated that he will not fill the TANF appl. out until cl. becomes more compliant. At this point he believes the only reason that she's coming is to get the appl. completed." [R. 434]. Here are six examples from six different sources indicating that Smith was capable of work, or indicating that she was on a path to overcoming her mental impairments and joining the workforce. This Court's charge is not to undertake or to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Instead, this Court must determine if there was substantial evidence to support ALJ Costanzo's decision. Substantial evidence is defined as "such relevant evidence as 'a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. of N. Y. v. NLRB*, 305 U.S. 197, 229 (1938)). It would be improper, and incorrect for this court

14

to conclude that the ALJ, relying on the opinions of six health care providers cited above, unreasonably accepted this evidence to support his decision. As such, this Court should find there was substantial evidence to support ALJ Costanzo's decision.

Since ALJ Costanzo's decision was supported by the notes and statements of six of Smith's health care providers, at least a scintilla of evidence exists to support the substantial evidence requirement of 42 U.S.C. 405(g) to sustain the ALJ's finding. Furthermore, since the C.F.R. does not absolutely *require* the ALJ to give controlling weight to the opinion of a treating physician, let alone a therapist, he did not make an error of law in considering Ms. Pugh's opinions as he did. As a result, Smith has failed to overcome the burden required by 42 U.S.C. 405(g).

*Claim (b)*

Smith's second claim concerns the ALJ's alleged improper rejection of the medical opinion of Dr. Mukesh Shah. [Pl.'s Br. Mot. Summ. J. at 21]. This argument also appears to challenge the ALJ's finding on both evidentiary and legal grounds. For the same reasons set forth above concerning the analysis and the weight afforded to the opinion evidence, as well as the actual analysis in the decision, the Court finds that the ALJ's decision was proper.

To recall, it is true that "[t]he ALJ must generally give more weight to the opinion of a treating physician because that physician is often most able to provide 'a detailed, longitudinal picture' of a claimant's alleged disability. However, 'circuit precedent does not require that a treating physician's testimony be given controlling weight.' In fact, 'if a physician's opinion is not supported by the clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.'" *Thompson*, at *11 (W.D.Va. Sep. 17, 2008) (*quoting Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir.1992) (per curiam); *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996)

respectively). In this case, such inconsistency was precisely ALJ Costanzo's concern with Dr. Shah's findings. For example, to demonstrate his deliberative analysis of Dr. Shah's medical findings, ALJ Costanzo's decision recalled the variance in the record between several of Dr. Shah's own findings:

> Consideration was given to Dr. Shah's findings from December 2005, when he reported "marked" limitations in the claimant's ability to maintain attention and concentration for extended periods of time, in her ability to maintain regular attendance and in her ability to complete a normal work week without interruptions from psychologically based symptoms. These findings are inconsistent with his statements in treatment notes, which detail consistent noncompliance on the claimant's part, with the claimant's own reports of improvement with regular use of medication and with his opinion that the claimant only returned to therapy to have a form for general relief filled out. The findings of December 2005 are also inconsistent with his statement from May 2006, that with good compliance, Ms. Smith might be able to return to work, even on a part-time basis. Because the longitudinal medical evidence does not support "marked" limitations in the areas of functioning identified by Dr. Shah in December 2005, *I give minimal weight to these findings.*

[R. 26] (emphasis added) (internal citations omitted). As a result of the patent inconsistencies, ALJ Costanzo found it prudent to assign minimal weight to Dr. Shah's findings. This credibility determination was one fully within his power. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); 20 C.F.R. § 416.927(f)(2) (2010). Additionally, contrary to what Smith alleges, that "the ALJ failed to sufficiently explain the weight he accorded each medical opinion and failed to provide sufficient reasonings as to why he did not give the opinion of Ms. Smith's treating psychiatrist controlling weight," [Pl.'s Br. Mot. Summ. J.at 14], the record could not be more transparent. The last sentence of the ALJ's decision, cited above, makes perfectly clear how and why ALJ Costanzo reached his decision. Thus, since ALJ Costanzo clearly took into consideration Dr. Shah's opinion but found it at odds with the doctor's own separate findings, ALJ Costanzo was free to assign less credibility to the doctor's assessment. Smith's argument that a remand is warranted for failure to

give appropriate weight, and failure to base his decision on substantial evidence is without merit and contrary to the statute.

Furthermore, ALJ Costanzo's decision to assign Dr. Shah's opinions less weight was supported by substantial evidence to meet the requirements of 42 U.S.C. 405(g) and *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). *See supra* pp 13-15. Lastly, since the C.F.R. does not absolutely *require* the ALJ to give controlling weight to the opinion of a treating physician, the ALJ did not make an error of law in considering Dr. Shah's opinions as he did. As a result, Smith has failed to meet the burden of 42 U.S.C. 405(g).

*Claim (c)*

Lastly, Smith argues that the ALJ erred in his finding that she could perform work on a regular and sustained basis because the record as a whole demonstrates otherwise. [Pl.'s Br. Mot. Summ. J.at 19]. Throughout this allegation Smith makes the overarching and vague claim that "[t]he evidence in this case establishes the existence of medically determinable impairments in intellectual functioning, depression, and restrictions on social functioning." [Pl.'s Br. Mot. Summ. J. at 20]. This claim must be treated for what it is, a nebulous, unspecified, undefinable prayer for relief, and this Court is not the place for such an argument.

Once again, this Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record, and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C.A. § 405(g) (2010). In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Hays*, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as

17

to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or the [Commissioner's] designate, the ALJ)." *Craig,* 76 F.3d at 589. Ambiguously claiming that the whole decision was wrong, or not supported by "substantial evidence" is not sufficient to overcome Smith's burden in seeking a remand or reversal. "Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." *Hays,* 907 F.2d at 1456. What Smith and her counsel fail to recognize with this last claim is that "[t]his Court does not find facts or try the case de novo when reviewing disability determinations." *King v. Califano,* 599 F.2d 597, 599 (4th Cir.1979). As such, the Court must decline to groom the administrative record in Smith's hope that it find an instance of unsubstantial evidence.

**D.      Conclusion**

In sum, recalling the standard of review set out in *Craig,* there appears "substantial evidence" to support the Commissioner's decision to deny disability, and SSI. Similarly, there is no apparent error of law on the part of the ALJ. This is so because Smith has failed to show that the ALJ's decision misapplied the law in his deliberative process. The ALJ's decision was supported by substantial evidence because he used the five-step model for determining disability, and, when he carefully scrutinized the objective medical evidence, he determined that Smith was capable of performing the exertional demands of work. With the assigned RFC classification, the ALJ concluded that there were a substantial number of jobs existing in the national economy which Smith could perform. Finally, although Smith argued that the ALJ improperly applied the opinions of Ms. Pugh, and Dr. Shah, particularly pertaining to the weight of authority for their opinion evidence, this Court has found that such decisions were firmly in his power and did not constitute an error of law.

Given the deferential standard afforded to the Commissioner as provided in *Perales*, the Court should affirm the ALJ's findings.

## V. <u>RECOMMENDATION</u>

For the foregoing reasons, the Court recommends that Smith's Motion for Summary Judgment be DENIED; that the Commissioner's Motion for Summary Judgment be GRANTED; that the final decision of the Commissioner be AFFIRMED; and that Judgment be entered in favor of the Commissioner.

## VI. <u>REVIEW PROCEDURE</u>

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(c):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(d) of said rules. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2. A district judge shall make a *de novo* determination of those portions of this Report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir.), *cert. denied*, 467 U.S. 1208 (1984).

_____/s/_____
Tommy E. Miller
United States Magistrate Judge

Norfolk, Virginia
March 11, 2010

# CLERK'S MAILING CERTIFICATE

A copy of the foregoing Report and Recommendation was mailed this date to each of the following:

Charlene A. Morring, Esq.
Montagna Klein Camden LLP
425 Monticello Ave
Norfolk, VA 23510

George M. Kelley, III, Esq.
United States Attorney's Office
101 W. Main St
Suite 8000
Norfolk, VA 23510

Fernando Galindo, Clerk

By _____

Deputy Clerk

March 1 2010