IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION



UGANDA SMITH,

PLAINTIFF,

v.                                                                  CIVIL CASE NO. 4:09CV80

COMMISSIONER OF SOCIAL SECURITY,

DEFENDANT.

## ORDER

This matter comes before the Court on Plaintiff Uganda Smith's ("Plaintiff" or "Smith") Objections to the Report and Recommendation of the Magistrate Judge. Doc. 16. For the reasons explained below, the Court **OVERRULES** Smith's objections and **ADOPTS** the Magistrate Judge's Report & Recommendation (R&R).

### I. BACKGROUND

Plaintiff does not object to the recitation of the procedural and factual background of this case contained in the R&R, which sets forth, inter alia, the following facts. Plaintiff Smith filed an application for supplemental security income (SSI) with the Social Security Administration on February 18, 2005. R&R at 1. The application alleged that Plaintiff suffered from debilitating depression, mental health problems, and anxiety beginning on May 1, 2000. Id. at 2. On June 10, 2005, the application was denied, and on September 16, 2005, following reconsideration, it was again denied. Id. On November 6, 2006, an Administrative Law Judge (ALJ) held a hearing on Smith's application, and a decision and order denying Plaintiff's request for benefits

1

was issued on May 21, 2007. Id. Smith sought to appeal the ALJ's decision, but her request for review was denied on April 24, 2009, and the ALJ's decision became final on that date. Id.

Plaintiff then turned to the federal court system. She filed a Complaint against the Commissioner of Social Security ("the Commissioner") on June 19, 2009. Doc. 1. The Commissioner filed an Answer on August 26, 2009. Doc. 6. After the Court referred this matter to a Magistrate Judge on September 11, 2009, Doc. 8, both parties filed motions for summary judgment, Docs. 10 and 12. On March 12, 2010, the Magistrate Judge issued the R&R, which concludes that Smith is capable of substantial gainful activity notwithstanding her disabilities, and accordingly recommends that summary judgment be issued in favor of the Commissioner. Doc. 15 at 19.

Plaintiff filed her Objections to the Report and Recommendation of the Magistrate Judge on March 25, 2010. Doc. 16. Defendant filed a response to the objections on March 31, 2010, and the matter is now mature for the Court's consideration.

## II. STANDARD OF REVIEW

Pursuant to the Federal Rules of Civil Procedure, the Court reviews de novo any part of a Magistrate Judge's recommendation to which a party has properly objected. Fed. R. Civ. P. 72(b)(3). The Court may then "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Id.

In exercising de novo review, the Court analyzes the Commissioner's final decision using the same standard as that used by the Magistrate Judge. Specifically, the Court's review of the Commissioner's decision is limited to determining whether that decision was supported by substantial evidence on the record, and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir.

2

2005). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept to support a conclusion." Id. (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)) (internal quotation mark omitted). Courts have further explained that substantial evidence is less than a preponderance of evidence, but more than a mere scintilla of evidence. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Importantly, in reviewing the ALJ's decision the Court does not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." Id. (quoting Craig, 76 F.3d at 589) (internal quotation mark omitted) (final alteration in original). Thus, if the Court finds that there was substantial evidence to support the ALJ's factual findings, even if there was also evidence to support contrary findings, the ALJ's factual findings must be upheld.

### III. ANALYSIS

In his May 21, 2007 opinion, the ALJ described and then followed a five-step process to determine whether Smith is disabled, in accordance with regulation. See 20 C.F.R. 416.920(a). The Magistrate Judge summarized these five steps, which involve determining whether Smith:

> (1) is engaged in a substantial gainful activity; (2) has a severe impairment, (3) has an impairment that equals a condition contained within the Social Security Administration's official listing of impairments, (4) has an impairment that prevents past relevant work, and (5) has an impairment that prevents her from any substantial gainful employment.

R&R at 6; see 20 C.F.R. § 416.920. The ALJ also explained that if the claimant is found to have one or more impairments, then the ALJ must determine the claimant's residual functional capacity (RFC), which is defined as the claimant's "ability to do physical and mental work activities on a sustained basis despite limitations from her impairments." R. at 20. While Plaintiff does not specifically identify the step in the above process to which she objects, it appears that her objection is focused on the ALJ's determination of her RFC, and the Magistrate

3

Judge's conclusion that that determination was supported by substantial evidence. See Doc. 16 at 2 ("Ms. Smith contends that the decision of the ALJ that she is capable of performing the exertional demands of work on a regular and sustained basis is not supported by substantial evidence in the record . . . ."). More specifically, Plaintiff argues that the Magistrate Judge erred in concluding that the ALJ's decision was supported by substantial evidence because "the ALJ failed to analyze and sufficiently explain the weight given to probative exhibits in the record." Id. at 3.

The existence of substantial evidence is not simply a question of whether there are enough persuasive facts in the record to meet the substantial evidence standard. Were this the case, an ALJ could stop reviewing evidence immediately after finding enough facts to support a conclusion in a reasonable mind. Rather, "[u]nless the [ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits," the Court cannot properly determine whether the ALJ's decision is supported by substantial evidence. Gordon v. Schweiker, 725 F.2d 231, 236 (4th Cir. 1984) (quoting Arnold v. Secretary, 567 F.2d 258, 259 (4th Cir. 1977)); see also 20 C.F.R. § 404.1527(b) ("In deciding whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive."). Plaintiff relies on this legal prerequisite in making her objection. She argues that the ALJ failed to "evaluate the medical opinion of her treating licensed professional counselor, Ms. Pugh, and assign it any evidentiary weight," such that a finding of substantial evidence cannot properly be made. Doc. 16 at 3–4 (emphasis omitted).

Medical opinions are defined by regulation as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [one's] impairment(s), . . . what [one] can still do despite impairment(s), and [one's]

4

physical and mental restrictions." 20 C.F.R. § 404.1527(a)(2) (emphasis added). An ALJ must evaluate every medical opinion in the record, regardless of its source. Id. § 404.1527(d). Importantly, however, this mandatory evaluation requirement does not apply to the opinion issued by Ms. Pugh, who does not fall within the definition of an "acceptable medical source," see id. § 404.1513(a) (defining "acceptable medical sources"), and whose opinion is therefore not a "medical opinion" within the meaning of the federal regulations. Pursuant to Section 404.1513(d), her opinion—and any opinion from "other sources" such as therapists or nurse-practitioners, even if medical in nature—"may" be used "to show the severity of [one's] impairment(s) and how it affects [one's] ability to work." Id. § 404.1513(d) (defining "other sources"). Thus, an ALJ is permitted, but not required, to use opinions such as those authored by Ms. Pugh in making decisions.

Despite this clear regulatory language, Plaintiff argues that the ALJ erred by not explicitly discussing and assigning weight to a particular treatment record created by Ms. Pugh. Although the ALJ did discuss some of Ms. Pugh's treatment records, see R. at 22 (discussing treatment notes from therapy received by Smith at the Hampton-Newport News Community Services Board), he did not discuss Ms. Pugh's assessment of Plaintiff's RFC, see R at 371–73, which Plaintiff contends he should have done. Further, Plaintiff argues that the ALJ was required, pursuant to Social Security Ruling 06-3p ("Ruling 06-3p"), to explain how much weight he assigned to Ms. Pugh's RFC assessment and how that assessment affected his reasoning. Doc. 16 at 6. Ruling 06-3p states that the ALJ "generally should explain the weight given to opinions from . . . 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the

5

adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." S.S.R. 06-3p (2006).

While an ALJ is required to consider all of the relevant evidence in the record, there is no requirement that the ALJ expressly discuss each piece of that evidence. See S.S.R. 06-3p (recognizing "a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision"). Indeed, such a requirement, if it existed, would impose an insuperable burden on the adjudicatory system of the Social Security Administration. The mere fact that the ALJ did not discuss one, several, or even many treatment records cannot therefore justify the conclusion that the ALJ did not consider those records. To the contrary, the ALJ did discuss some of Ms. Pugh's treatment records, which suggests that he had those records before him and that he considered all of them as required by federal regulation. Furthermore, as explained previously, the use of Ms. Pugh's opinion by the ALJ in reaching his decision was permissive rather than mandatory, because her opinion does not fall within the regulatory definition of a medical opinion. 20 C.F.R. § 404.1513(a), (d). Thus, Plaintiff provides no persuasive reason to believe that the ALJ did not "evaluate[] and analyze[]" the evidence "pursuant to the applicable regulatory provisions of the [Social Security] Act." Doc. 16 at 4 (emphasis omitted). This is true even though Plaintiff points to evidence in the record that could have been used in support of an alternate outcome, see Doc. 16 at 7–10; conflicting evidence undoubtedly exists in every dispute over a claimant's eligibility to receive SSI, but it is not the Court's job to reweigh such evidence when reviewing an ALJ's decision.

Plaintiff also fails to persuade the Court that the ALJ was required by Ruling 06-3p to discuss Ms. Pugh's RFC assessment and explain the evidentiary weight assigned thereto.[1] While

---

[1] Neither does Social Security Ruling 96-8p ("Ruling 96-8p"), briefly cited by Plaintiff towards the end of her brief, see Doc. 16 at 11–12, require that the ALJ explicitly discuss Ms. Pugh's opinion. Ruling 96-8p does require an ALJ

Ruling 06-3p certainly encourages ALJs to evaluate each opinion in the record, regardless of its source, the ruling is not written in the imperative form. See Ruling 06-3p (noting that "the adjudicator generally should explain the weight given to opinions from . . . 'other sources'") (emphasis added). Additionally, to read Ruling 06-3p as requiring an ALJ to discuss every opinion in the record would be to ignore the plain language of the federal regulations, which state only that an ALJ "may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work." 20 C.F.R. § 404.1513(d) (emphasis added). Indeed, such a reading of Ruling 06-3p would serve to eliminate, in significant part, the regulatory distinction between acceptable medical sources and other sources. See id. § 404.1513(a), (d). Finally, the ALJ explicitly stated in his decision that he had "considered opinion evidence in accordance with the requirements of . . . Social Security Rulings 96-2p, 96-5p, 96-6p, and 06-3p." R. at 24. That a particular treatment record was not discussed by the ALJ does not show that this statement is false.

## IV. CONCLUSION

Plaintiff does not challenge the sufficiency of the evidence in the record that supports the ALJ's conclusion; rather she argues that the ALJ failed to consider all of the relevant evidence and to explicitly discuss Ms. Pugh's assessment of Plaintiff's RFC, such that a finding of substantial evidence is legally barred. For the reasons discussed above, the Court concludes that the ALJ did consider all of the relevant evidence, and that the ALJ did not err in omitting an explicit discussion of Ms. Pugh's assessment of Plaintiff's RFC. Accordingly, the Court

---

to "consider and address medical source opinions" when making an RFC assessment. S.S.R. 96-8p (1996). However, as explained above, Ms. Pugh is not considered an acceptable medical source and her treatment records therefore do not fall within the regulatory definition of medical opinions, such that this requirement does not apply to those records.

7

**OVERRULES** Plaintiff's objections, Doc. 16, and **ADOPTS**, in its entirety, the Magistrate Judge's Report and Recommendation, Doc. 15.

The Clerk is **REQUESTED** to send a copy of this order to all counsel of record.

It is so **ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge

HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, VA
Date: April 22, 2010